```
                  IN THE UNITED STATES DISTRICT COURT
                  FOR THE MIDDLE DISTRICT OF GEORGIA
                           COLUMBUS DIVISION

JUDY ROWE,                        *

         Plaintiff,               *

vs.                               *
                                        CASE NO. 4:15-CV-51 (CDL)
UNITED STATES OF AMERICA,         *

         Defendant.               *
_____
```

## O R D E R

Plaintiff Judy Rowe owns a house in Midland, Georgia near Fort Benning, Georgia. Rowe claims that the United States Army built firing ranges too close to her house and that her house was damaged as a result of vibrations caused by construction of the ranges. Rowe brought suit under the Federal Tort Claims Act, 28 U.S.C. § 1346(b). The United States argues that Rowe's claims should be dismissed under the discretionary exception to the Federal Tort Claims Act. For the reasons set forth below, the Court agrees and therefore grants the Government's Motion to Dismiss (ECF No. 13). The Government's motion to exclude the opinion of Rowe's expert witness (ECF No. 14) is moot.

## DISCUSSION

The crux of Rowe's claim is that the United States was negligent in the construction of the firing ranges "by conducting said activities in such close the [sic] proximity to

her home." Pl.'s Resp. to Def.'s Mot. to Dismiss 1, ECF No. 25.
Rowe does not dispute that her "sole contention as to the
wrongful conduct of the United States is that the small arms
ranges were built too close to her property." Def.'s Mot. to
Dismiss Ex. 1, Statement of Material Facts ¶ 1, ECF No. 13-1;
Pl.'s Resp. to Def.'s Mot. to Dismiss 1-2, 4 (adopting "all
attachments, enclosures, and exhibits to the Defendant's motion"
and arguing that the Government acted negligently by conducting
its land clearing and construction activities "in such close the
[sic] proximity to her home" and that a genuine fact dispute
exists on whether "Plaintiff has proved a duty owed and breach
thereof with respect to the placement of the small arms firing
ranges"); Rowe Dep. 139:13-20, ECF No. 19 (stating that the
Government should have moved "the ranges back to another area");
*id.* at 143:8-144:1 (noting that if the Government "wouldn't have
built so close to" her house, "they wouldn't have had to
detonate" unexploded ordnance left from training during the
Korean and Vietnam Wars). In other words, Rowe does not claim
that the Government breached any duty to her *except* by choosing
to locate the firing ranges close to her house.

"It is well settled that the United States, as a sovereign
entity, is immune from suit unless it consents to be sued."
*Zelaya v. United States*, 781 F.3d 1315, 1321 (11th Cir. 2015).
Through the Federal Tort Claims Act, the United States "waived

its immunity from tort suits based on state law tort claims." *Id.* But the Federal Tort Claims Act is a limited waiver; "that which the Sovereign gives, it may also take away, and the Government has done so through statutory exceptions in 28 U.S.C. § 2680, including the § 2680(a) discretionary function exception." *Id.* at 1322. That exception "serve[s] to block the waiver of sovereign immunity that would otherwise occur under the" Act. *Id.*

The discretionary function exception provides that the Federal Tort Claims act shall not apply to:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). In enacting the discretionary function exception, "Congress wished to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984). "In short, the discretionary function exception serves to preserve sovereign immunity for any claim that is based on a federal agency or employee's performance or nonperformance of a discretionary task, even if, in so acting,

the agency employee may have abused his discretion." *Zelaya*, 781 F.3d at 1329.

The courts use a two-part test to determine whether the discretionary function exception applies. "First, the conduct that forms the basis of the suit must involve an element of judgment or choice by the employee." *Id.* Second, the judgment must be "of the kind that the discretionary function exception was designed to shield." *Id.* (quoting *Berkovitz ex rel. Berkovitz v. United States*, 486 U.S. 531, 536 (1988)).

For the first question, "[t]he relevant inquiry is whether the controlling statute or regulation mandates that a government agent perform his or her function in a specific manner." *Fagg v. United States*, No. 15-14091, 2016 WL 2851132, at *2 (11th Cir. May 16, 2016) (per curiam) (alteration in original) (quoting *Hughes v. United States*, 110 F.3d 765, 768 (11th Cir. 1997) (per curiam)). "[U]nless a 'federal statute, regulation, or policy specifically prescribes a course of action embodying a fixed or readily ascertainable standard,' it will be presumed that the particular act involved an element of judgment or choice." *Zeyala*, 781 F.3d at 1330 (quoting *Autery v. United States*, 992 F.2d 1523, 1529 (11th Cir. 1993)).

Here, Rowe did not point to any statute, regulation, or policy that specifically prescribes where the Army must locate firing ranges on its military bases. Rowe also did not point to

any statute, regulation, or policy that sets limits on where the Army may locate firing ranges on its military bases.  Rowe does not dispute that the firing ranges were built at Fort Benning as part of the Department of Defense's base closure and realignment initiative.  As the Government points out, in selecting a site for the firing ranges as part of that initiative, the Army had to follow the process set forth in the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. § 4321, *et seq.*, which requires federal agencies to evaluate the environmental consequences of their actions before proceeding with a major project.  "NEPA is procedural, setting forth no substantive limits on agency decision-making." *Sierra Club v. Van Antwerp*, 526 F.3d 1353, 1361 (11th Cir. 2008).  "NEPA only requires that an agency follow this procedure; it does not mandate any particular result." *Id.* at 1360.  "NEPA's procedural mandates require agencies to inform their discretion in decisionmaking." *In re Katrina Canal Breaches Litig.*, 696 F.3d 436, 450 (5th Cir. 2012).  "An agency that complies with NEPA gives outside influences (the public, lawmakers, other agencies) more information with which to put pressure on that agency, but the original agency retains substantive decisionmaking power regardless." *Id.*

    Rowe does not dispute that the Army followed the NEPA process in determining where to locate the ranges; in fact, she

submitted comments during the public comment period. And Rowe did not point to any other statute, regulation, or policy that contains requirements on the specific placement of firing ranges on military bases. In sum, the decision of where to locate firing ranges on a military base is not mandated by any statute or regulation, and the Court is satisfied that the Government's decision of where to locate the firing ranges "involved an element of judgment or choice." *Zeyala*, 781 F.3d at 1330.

The next question is whether the Government's decision of where to locate firing ranges on a military base is the type of decision "that the discretionary function exception was designed to shield." *Id.* (quoting *Berkovitz*, 486 U.S. at 536). "A particular decision will be of the kind protected by the exception if it is the type of decision that one would expect to be inherently grounded in considerations of policy." *Id.*; *see also Fagg*, 2016 WL 2851132, at *3 (finding that postal service's resource allocation decisions fell within the discretionary function exception). "[W]hen a government agent is permitted to exercise discretion in making a particular decision—whether that permission is express or implied—'it must be presumed that the agent's acts are grounded in policy when exercising that discretion.'" *Zelaya*, 781 F.3d at 1330 (quoting *United States v. Gaubert*, 499 U.S. 315, 324 (1991)).

Again, Rowe did not point to any statute, regulation, or policy setting limits on where the Army may locate firing ranges on its military bases.   The Court thus concludes that the Government had discretion over where to build firing ranges on Fort Benning.   The Court is satisfied that the decision of where to build a firing range on a military base is grounded in considerations of policy because such a decision involves many factors, including safety, available space on the base, the type of terrain needed for the firing ranges, the location of other facilities on the base, and environmental impact.   *See Abreu v. United States*, 468 F.3d 20, 26, 33 (1st Cir. 2006) (finding that military training activities at a Navy facility fell within the discretionary function exception); *cf. OSI, Inc. v. United States*, 285 F.3d 947, 953 (11th Cir. 2002) (concluding that decisions regarding the manner of waste disposal on a military base "reflect the kind of judgment that the discretionary function exception is designed to shield"); *Chaffin v. United States*, 176 F.3d 1208, 1211 (9th Cir. 1999) (finding that the Air Force's design for living quarters, which tragically turned out to be vulnerable to polar bear attacks, fell within the discretionary function exception).

For these reasons, the Court finds that the second prong of the discretionary function test is met.   The discretionary function exception thus applies in this case.

7

CONCLUSION

As discussed above, the Court finds that the discretionary function exception to the Federal Tort Claims Act applies here and that the United States has not waived its sovereign immunity as to Rowe's claims. Accordingly, the Army's Motion to Dismiss (ECF No. 13) is granted.


IT IS SO ORDERED, this 22nd day of July, 2016.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA